UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

ROLAND HAAS                         No. 2:12-cv-00265-MCE-KJN

          Plaintiff,

     v.                             <u>MEMORANDUM AND ORDER</u>

COUNTY OF EL DORADO, et al.,

          Defendants.

----oo0oo----

     Plaintiff Roland Haas ("Plaintiff") initiated this action against, among others, Defendants California Tahoe Emergency Services Operations Authority ("Tahoe Emergency Services") and emergency medical technicians, or paramedics, Scott Blasser and Jesse Snyder (collectively, "Defendants") alleging violations of both state and federal law arising out of an incident during which the individual Defendants purportedly injected Plaintiff with a tranquilizer and transported him to a local emergency room despite Plaintiff's unequivocal statements declining medical treatment.  Presently before the Court is Defendants' Motion to Dismiss ("Motion") each of Plaintiff's causes of action.

1

For the following reasons, Defendants' Motion is GRANTED in part and DENIED in part.[1]

## BACKGROUND[2]

Plaintiff was a preschool teacher or teacher's aide at the "Under the Magic Pine Tree" preschool in South Lake Tahoe. During the afternoon of March 23, 2011, while working at the school, Plaintiff began to feel light-headed.  He exited the classroom in which he was stationed and subsequently fell to the floor.

Plaintiff's co-workers, believing Plaintiff may have suffered a seizure, called 911 to request medical assistance. Within two minutes of the incident, however, Plaintiff was able to stand on his own.  He advised his coworkers that he was feeling fine and walked into the bathroom of his own accord in order to compose himself.  When paramedics, including Defendants Blasser and Snyder, arrived on the scene, they found Plaintiff standing without assistance in front of a sink in the bathroom.

The paramedics questioned Plaintiff and subsequently advised him they were going to take him to Barton Memorial Hospital, which was located approximately one-hundred feet from the preschool.

///

---

[1] Because oral argument will not be of material assistance, the Court ordered this matter submitted on the briefing.  E.D. Cal. R. 230(g).

[2] The following facts are derived from Plaintiff's Complaint.

1  Plaintiff informed the paramedics that he neither wanted nor
2  needed to go to the hospital in the ambulance, that he was
3  feeling fine, and that he was declining medical treatment.
4  Despite Plaintiff's repeated refusal to be treated, the
5  paramedics nonetheless insisted that they must transport
6  Plaintiff to the hospital.

7      Plaintiff thereafter informed the paramedics that he did not
8  want to incur an expensive ambulance charge to be transported to
9  a hospital so close by and that he would either walk there
10 himself or have a coworker drive him there instead.  Again
11 according to the paramedics at the time, however, Plaintiff had
12 no choice but to be taken to the hospital in an ambulance.
13 Plaintiff nonetheless again refused the paramedics' assistance,
14 declined to be treated or transported to the hospital and
15 returned to work at the preschool.

16     At some point during this time, the paramedics purportedly
17 contacted the police and requested assistance.  Officers
18 responded to the preschool, entered Plaintiff's classroom,
19 ordered all children and staff, other than Plaintiff, to leave
20 the room, closed the classroom door, and required Plaintiff to
21 remain in the room in the presence of five police officers and
22 four paramedics.  The police officers and paramedics never
23 advised Plaintiff that he was free to leave the room, nor did
24 Plaintiff believe he would be permitted to leave if he tried.

25     After clearing the classroom, the officers advised Plaintiff
26 that he was required to follow the paramedics' orders and to
27 allow himself to be transported to the hospital in an ambulance.
28 ///

1 | Plaintiff again unequivocally declined medical treatment, assured
2 | the officers he felt fine, and reiterated multiple times that he
3 | was refusing treatment and would not go to the hospital in an
4 | ambulance.  According to Plaintiff, the officers nonetheless
5 | continued to "badger" him with additional questions and comments.
6 | When Plaintiff eventually did attempt to exit the classroom,
7 | the police officers allegedly attacked Plaintiff and tackled him,
8 | knocking him to the ground.  According to Plaintiff, while he was
9 | under the control of officers, Plaintiff was forced to lie face
10 | down on the floor, was struck in the face, was handcuffed and was
11 | subjected to at least three "drive stun" taser shots to his body.
12 | Then, as is especially pertinent to Defendants' current Motion,
13 | police officers allegedly ordered Defendant Blasser or another
14 | paramedic to inject Plaintiff with a tranquilizer.  Despite
15 | Plaintiff's clear statements that he had declined all medical
16 | treatment, one of the paramedics injected Plaintiff with the
17 | Federal Drug Administration-regulated drug Midazolam, which is
18 | allegedly meant for use before surgeries to induce sedation and
19 | amnesia.
20 | Officers then placed shackles on Plaintiff's ankles, forced
21 | him onto a gurney, then further restrained him, placed him inside
22 | an ambulance and transported him the one hundred feet to the
23 | hospital's emergency room.  Plaintiff remained restrained during
24 | his subsequent examination by medical staff before he was
25 | discharged by hospital personnel approximately thirteen minutes
26 | after arriving.
27 | ///
28 | ///

4

1    Following Plaintiff's discharge, police officers nonetheless
2  still required Plaintiff to remain at the hospital for an
3  extended period of time to await an evaluation by a
4  representative from the Department of Mental Health.  When the
5  mental health specialist eventually arrived and examined
6  Plaintiff, he determined Plaintiff did not present any danger to
7  himself or others.  It was only then that Plaintiff was permitted
8  to leave the hospital.

9    Later that night, Plaintiff returned to the hospital because
10  he was experiencing, among other things, severe pain in his left
11  shoulder.  Plaintiff was diagnosed as having suffered a shoulder
12  sprain, an abrasion to his left wrist, and several wounds to his
13  lower back, all of which were allegedly the result of having
14  being attacked, restrained and tasered by the police officers.
15  According to Plaintiff, the official conduct described in his
16  Complaint was the result of policies, practices or procedures of,
17  among other entities, Defendant Tahoe Emergency Services.

18    Plaintiff consequently initiated this suit alleging the
19  following causes of action against Defendants: 1) unreasonable
20  seizure and use of excessive force in violation of the Fourth
21  Amendment (First Cause of Action); 2) unreasonable seizure of the
22  person in violation of the Fourth Amendment (Second Cause of
23  Action); 3) deprivation of right to refuse medical treatment in
24  violation of the Fourteenth Amendment (Third Cause of Action);
25  4) municipal/supervisory liability (Fourth Cause of Action);
26  5) professional negligence/medical malpractice (Fifth Cause of
27  Action;
28  ///

5

6) intentional interference with civil rights in violation of the
Bane Act, California Civil Code § 52.1 (Sixth Cause of Action);
7) false imprisonment (Seventh Cause of Action); 8) assault and
battery (Eighth Cause of Action); and 9) medical battery (Ninth
Cause of Action).  Defendants subsequently moved to dismiss each
of Plaintiff's claims against them.  For the following reasons,
Defendants' Motion is GRANTED in part and DENIED in part.

## STANDARD

On a motion to dismiss for failure to state a claim under
Federal Rule of Civil Procedure 12(b)(6),[3] all allegations of
material fact must be accepted as true and construed in the light
most favorable to the nonmoving party.  Cahill v. Liberty Mut.
Ins. Co., 80 F. 3d 336, 337-38 (9th Cir. 1996).  Rule 8(a)(2)
"requires only 'a short and plain statement of the claim showing
that the pleader is entitled to relief,' in order to 'give the
defendant fair notice of what the...claim is and the grounds upon
which it rests.'"  Bell. Atl. Corp. v. Twombly, 550 U.S. 544, 555
(2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  A
complaint attacked by a Rule 12(b)(6) motion to dismiss does not
require detailed factual allegations.  Id.  However, "a
plaintiff's obligation to provide the grounds of his entitlement
to relief requires more than labels and conclusions, and a
formulaic recitation of the elements of a cause of action will
not do."  Id.  (internal citations and quotations omitted).

---

[3] All further references to "Rule" or "Rules" are to the
Federal Rules of Civil Procedure unless otherwise noted.

6

A court is not required to accept as true a "legal conclusion couched as a factual allegation." Ashcroft v. Iqbal,129 S. Ct. 1937, 1949-50 (2009) (quoting Twombly, 550 U.S. at 555).  The Court also is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Sciences Sec. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008).  "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

Furthermore, "Rule 8(a)(2)...requires a 'showing,' rather than a blanket assertion, of entitlement to relief." Twombly, 550 U.S. at 556 n.3 (internal citations and quotations omitted). "Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." Id. (citation omitted).  A pleading must contain "only enough facts to state a claim to relief that is plausible on its face." Id. at 570.  If the "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id.  However, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

///

///

///

7

1    A court granting a motion to dismiss a complaint must then

2  decide whether to grant a leave to amend.  Leave to amend should

3  be "freely given" where there is no "undue delay, bad faith or

4  dilatory motive on the part of the movant,...undue prejudice to

5  the opposing party by virtue of allowance of the amendment, [or]

6  futility of the amendment . . . ."  <u>Foman v. Davis</u>, 371 U.S. 178,

7  182 (1962); <u>Eminence Capital, LLC v. Aspeon, Inc.</u>, 316 F.3d 1048,

8  1052 (9th Cir. 2003) (listing the <u>Foman</u> factors as those to be

9  considered when deciding whether to grant leave to amend).

10  Dismissal without leave to amend is proper only if it is clear

11  that "the complaint could not be saved by any amendment."  <u>Intri-</u>

12  <u>Plex Techs., Inc. v. Crest Group, Inc.</u>, 499 F.3d 1048, 1056 (9th

13  Cir. 2007) (internal citations and quotations omitted).

14

15                              **ANALYSIS**

16

17    **A.   Plaintiff's First and Second Causes of Action:**
         **Unreasonable Seizure and Use of Excessive Force and**
18       **Unreasonable Seizure of the Person in Violation of the**
         **Fourth Amendment.**
19

20    By way of his First and Second Causes of Action, Plaintiff

21  alleges as to the moving Defendants that the injection of the

22  tranquilizer and restraint of Plaintiff for purpose of

23  transporting him to the hospital violated his Fourth Amendment

24  rights to be free from unreasonable seizure and excessive force.

25  Defendants seek to dismiss these claims on the basis they are

26  entitled to qualified immunity.  For the following reasons, that

27  argument is rejected.

28  ///

"[G]overnment officials performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  In determining whether qualified immunity applies, the Court should consider: 1) whether the facts, as alleged by Plaintiff, "make out a violation of a constitutional right"; and 2) whether Plaintiff's right was "clearly established" at the time of the alleged violation.  Pearson v. Callahan, 555 U.S. 223, 232 (2009).  Courts can exercise discretion in deciding which of the two prongs should be addressed first.  Id. at 236.

### 1. Whether Plaintiff adequately alleged the individual Defendants' actions resulted in a violation of a constitutional right.

With respect to the first prong of the qualified immunity test, Defendants argue that Plaintiff has not demonstrated a constitutional violation because he failed to establish he was unreasonably seized by the paramedics.[4]

///

///

---

[4] Plaintiff's claim of excessive force is analyzed under the Fourth Amendment's prohibition against unreasonable seizures as well. Graham v. Connor, 490 U.S. 386, 394 (1989).  Accordingly, finding a seizure is a condition precedent to Plaintiff's recovery under both his First and Second Causes of Action.  See Lum v. City of Grants Pass, 2011 WL 915385, *13 (D. Or.) ("The threshold consideration in a Fourth Amendment inquiry is whether the governmental conduct in question constitutes a search or seizure within the meaning of the amendment's text.").

A Fourth Amendment seizure occurs when there is "an intentional acquisition of physical control" and, in light of the circumstances, "a reasonable person would have believed that he was not free to leave." U.S. v. All Nasser, 555 F.3d 722, 728 (9th Cir. 2009). Here, the paramedics clearly intended to acquire control over Plaintiff by injecting Plaintiff with a tranquilizer and restraining Plaintiff, and a reasonable person would not have felt free to leave once injected with a sedation-inducing drug. Thus, Plaintiff has adequately alleged he was seized within the meaning of the Fourth Amendment.

The inquiry into whether such a seizure was reasonable is an objective one. Graham, 490 U.S. at 395. Under this objective test, the Court balances "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing government interests at stake." United States v. Enslin, 327 F.3d 788, 796 (9th Cir. 2003) (quotation omitted). For the reasons that follow in the next section analyzing the second prong of the qualified immunity test, seizing a non-consenting, non-dangerous, competent adult for the purpose of rendering medical treatment in the absence of any real or apparent medical need is unreasonable. Accordingly, this Court finds Plaintiff has adequately alleged a violation of his constitutional right to be free from unreasonable seizure.

///

///

///

///

///

10

1          **2.   Whether the constitutional right purportedly
                   violated was clearly established.**

2

3          In determining whether Plaintiff's right was clearly

4    established, this Court considers Supreme Court and Ninth Circuit

5    precedent existing at the time of the alleged act.  <u>Community</u>

6    <u>House, Inc. v. City of Boise, Idaho</u>, 623 F.3d 945, 967 (9th Cir.

7    2010).  "In the absence of binding precedent, courts should look

8    at available decisions of other circuits and district courts to

9    ascertain whether the law is clearly established."  <u>Id.</u>  "For a

10   constitutional right to be clearly established, its contours must

11   be sufficiently clear that a reasonable official would understand

12   that what he is doing violates that right."  <u>Hope v. Pelzer</u>,

13   536 U.S. 730, 739 (2002) (internal quotation marks omitted).  The

14   Court should undertake the qualified immunity inquiry in light of

15   the specific context of the case, and not as a broad general

16   proposition.  <u>Anderson v. Creighton</u>, 483 U.S. 635, 639 (1987);

17   <u>Baker v. Racansky</u>, 887 F.2d 183, 186 (9th Cir. 1989).

18         Defendants argue that Plaintiff does not have a clearly

19   established constitutional right under the facts at issue here

20   because there is "no clear precedent in any of the circuits as to

21   whether acts by [emergency medical technicians] in restraining a

22   patient for medical treatment rather than for purposes of an

23   arrest or law enforcement constitute a Fourth Amendment seizure."

24   MTD at 9.  However, the Supreme Court "do[es] not require a case

25   directly on point" for the government official's conduct to

26   violate clearly established law.  <u>Ashcroft v. al-Kidd</u>, 131 S. Ct.

27   2074, 2083 (2011).

28   ///

11

1   The Supreme Court has made "clear that officials can still be on

2   notice that their conduct violates established law even in novel

3   factual circumstances."  Hope, 536 U.S. at 741.

4        The Ninth Circuit had previously taken the same position,

5   stating:

> We do not hold that Section 1983 plaintiffs must always
> find a case on point in their favor to show that their
> rights were clearly established.  Certainly they need
> not always produce a binding precedent....There may be
> cases of conduct so egregious that any reasonable
> person would have recognized a constitutional
> violation.

10  Backlund v. Barnhart, 778 F.2d 1386, 1390 (9th Cir. 1985)

11  (internal citation omitted); see also Mendoza v. Block, 27 F.3d

12  1357, 1361 (9th Cir. 1994) ("When the defendant's conduct is so

13  patently violative of the constitutional right that reasonable

14  officials would know without guidance from the courts' that the

15  action was unconstitutional, closely analogous pre-existing law

16  is not required to show that the law is clearly established.")

17  (quoting Casteel v. Pieschek, 3 F.3d 1050, 1053 (7th Cir. 1993));

18  Oliver v. Fiorino, 586 F.3d 898, 907 (11th Cir. 2009) (finding

19  that a right can be clearly established where the officer's

20  conduct "lies so obviously at the very core of what the Fourth

21  Amendment prohibits that the unlawfulness of the conduct was

22  readily apparent to [the officer], notwithstanding the lack of

23  fact-specific case law").  However, for the Court to find that

24  qualified immunity does not apply, the existing precedents "must

25  have placed the statutory or constitutional question beyond

26  debate."  al-Kidd, 131 S. Ct. at 2083.

27  ///

28  ///

12

1    There are very few cases dealing with the Fourth Amendment's
2  application in the context of paramedics or police officers
3  rendering emergency medical assistance.  In arguing that
4  Plaintiff cannot show a clearly established constitutional right,
5  Defendants rely on two such cases: the Sixth Circuit decision in
6  Peete v. Metro. Gov't of Nashville & Davidson County, 486 F.3d
7  217, 219 (6th Cir. 2007), and a Michigan district court's
8  decision in Mills v. Hall, No. 06-15689, 2008 WL 2397652 (E.D.
9  Mich. June 10, 2008).

10    In Peete, a woman called 911 to request medical assistance
11  for her grandson, who was suffering from an epileptic seizure.
12  486 F.3d at 219-20.  When the paramedics arrived, they found the
13  grandson "in an unconscious epileptic state."  Id. at 219.
14  Paramedics restrained the grandson both to keep him from moving
15  and to protect themselves.  Id. at 220.  Unfortunately, the
16  grandson died after the defendants accidentally cut off his air
17  supply.  Id.

18    The Sixth Circuit began its analysis with the observation
19  that "there [were] no cases applying the Fourth Amendment to
20  paramedics coming to the aid of an unconscious individual as a
21  result of a 911 call by a family member."  Id. at 220 (emphasis
22  added).  That court ultimately held that the grandson had not
23  been "seized" because he was unconscious and thus "could not
24  perceive any restraint on his liberty or otherwise feel compelled
25  to submit to a governmental show of force."  Id. at 221.
26  ///
27  ///
28  ///

13

The court further suggested, however, that the Fourth Amendment is inapplicable when force is used "to render solicited aid in an emergency," "rather than to enforce the law, punish, deter, or incarcerate." Id. at 221. The court nonetheless based its specific holding on the fact that neither the decedent nor his grandmother "asked the paramedics to refrain from treating him." Id. at 222.

In Mills, the plaintiff had apparently suffered from a heat stroke while at a flea market. 2008 WL 2397652, at *1. When paramedics and police officers responded to a resulting 911 call seeking medical assistance for the plaintiff, they observed that he was "staggering, sweating profusely and his color was very grey." Id. Plaintiff agreed to sit in a police car to cool off, but refused medical assistance. Id. One of the paramedics personally knew the plaintiff and noted that plaintiff "seemed 'out of character,'" and that "he seemed confused and did not recognize her." Id. at *2. Later when police officers tried to convince plaintiff to exit their vehicle, he refused and eventually "swung" at one of the officers and "hit him in the face." Id. Officers thereafter handcuffed plaintiff "to prevent him from hitting anybody." Id. at *3. Accordingly, based on their observations of plaintiff's behavior and plaintiff's serious medical symptoms, the paramedics in Mills determined that plaintiff was "incapable of competently objecting to treatment" and transported plaintiff to the hospital. Id. When plaintiff arrived to the hospital, his situation was labeled "urgent," and it was determined that plaintiff required immediate medical treatment. Id. at *4.

1    The <u>Mills</u> court, relying on <u>Peete</u>, concluded that the

2    plaintiff was not unlawfully seized in violation of the Fourth

3    Amendment.  <u>Id.</u> at *8.  That court explained that "a government

4    actor who restrains an individual while trying to render medical

5    aid does not 'seize' the person for purposes of Fourth Amendment

6    analysis."  <u>Id.</u>

7        Both <u>Peete</u> and <u>Mills</u> are factually distinguishable from the

8    case at issue.  In <u>Peete</u>, the decedent was unconscious and could

9    not refuse medical care.  The plaintiff in <u>Mills</u>, while

10   conscious, was determined to be incompetent to make decisions

11   regarding his medical care.  Here, to the contrary, the facts

12   alleged in the Complaint demonstrate that, at the time of the

13   incident, Plaintiff was competent, not in need of medical care,

14   and that Plaintiff explicitly and repeatedly refused any such

15   treatment.  Accordingly, neither <u>Peete</u> nor <u>Mills</u> apply to the

16   situation at issue before this Court.

17       This Court has, however, found several other cases that bear

18   more directly on the present action.  First, the Second Circuit

19   in <u>Green v. City of New York</u>, 465 F.3d 65 (2d Cir. 2006),

20   considered claims arising out of facts very similar to those

21   alleged here.  In <u>Green</u>, the plaintiff required the use of a

22   respirator to breathe.  <u>Id.</u> at 69.  When the respirator briefly

23   stopped working, plaintiff's family members dialed 911 and

24   requested emergency medical assistance.  <u>Id.</u> at 70.  By the time

25   the paramedics arrived, however, the family members had located

26   the manual device to restore plaintiff's breathing and "succeeded

27   in restoring [plaintiff] to consciousness and competence."  <u>Id.</u>

28   at 68-70.

15

1   Plaintiff, who was able to communicate by the way of coded
2   blinking and a talking computer, repeatedly informed the
3   paramedics that he was "OK" and that he did not want to go to the
4   hospital.  Id. at 70-71.  Despite plaintiff's clear responses
5   declining medical assistance, fire department personnel concluded
6   that plaintiff should be transported to the hospital, and he was
7   subsequently carried to an ambulance.  Id. at 72-73.  Plaintiff
8   later brought claims for unreasonable seizure and excessive force
9   under the Fourth Amendment.  Id. at 74.

10      The Green court began its analysis by determining that the
11  firefighter's actions amounted to an unreasonable seizure
12  prohibited by the Fourth Amendment.  Id. at 83.  Further, the
13  court disagreed with the defendants' contention that they were
14  entitled to qualified immunity.  Id.  The court concluded that
15  "it was clearly established...that a competent adult could not be
16  seized and transported for treatment unless she presented a
17  danger to herself or others."  Id.  The court further explained
18  that, if a person is otherwise competent, "dangerousness to
19  oneself justifying such a seizure does not include a refusal to
20  accept medical treatment."  Id.  "Whether or not [the plaintiff]
21  was in extremis, the officers could not have seized him if he
22  competently and voluntarily declined treatment."  Id. at 84.

23      Later, in 2010, the Sixth Circuit considered a case in which
24  police officers responding to a 911 call requesting medical
25  assistance attempted to provide medical care to a similarly
26  non-consenting plaintiff.  See McKenna v. Edgell, 617 F.3d
27  432 (6th Cir. 2010).  In McKenna, plaintiff apparently suffered a
28  seizure in his home.  Id. at 435.

1  The police officers, who arrived before the paramedics, attempted
2  to convince plaintiff to stand up and submit to medical
3  assistance.  Id.  The plaintiff started to get up but then
4  changed his mind and "just laid back down." Id.  The police
5  officers then attempted to physically lift the plaintiff up, but
6  he resisted and told them to stop.  Id.  The officers persisted,
7  eventually handcuffing plaintiff's wrists and ankles and taking
8  him out on a stretcher.  Id. at 435-36.  After a trial on his
9  subsequent Fourth Amendment claim, a jury found for the
10 plaintiff, and the police officers appealed arguing that they
11 were entitled to qualified immunity.  Id. at 437.

12     Relying on Peete, the McKenna court concluded that whether
13 the officers were entitled to qualified immunity turned on the
14 issue of "whether [the officers] acted in a law-enforcement
15 capacity or in an emergency-medical-response capacity when
16 engaging in the conduct that [the plaintiff] claimed violated the
17 Fourth Amendment." Id. at 439-40.  "If the officers acted as
18 medical-emergency responders," the court reasoned that
19 "[plaintiff's] claims would amount to a complaint that he
20 received dangerously negligent and invasive medical care," and
21 that "if any right to be free from such unintentional conduct by
22 medical-emergency responders exists under the Fourth Amendment,
23 it is not clearly established." Id. at 440.  The court
24 ultimately concluded that the police officers acted as law
25 enforcers, not medical emergency responders, and thus were not
26 entitled to qualified immunity.  Id. at 446.

27 ///
28 ///

1    Relevant for the purposes of the instant motion, the Sixth

2    Circuit in <u>McKenna</u> explicitly stated that "exposure to liability

3    does not depend merely on the profession of the government

4    actors.  It would not be coherent, for example to say that

5    paramedics who strap a patient to a gurney <u>without medical</u>

6    <u>need</u>...do not violate the Fourth Amendment, simply because they

7    are paramedics." <u>Id.</u> at 439 (emphasis added).  To the contrary,

8    "the qualified immunity turns on 'the specific purpose and the

9    particular nature of the conduct alleged in the complaint.'" <u>Id.</u>

10   at 439.

11   The <u>McKenna</u> court also emphasized that "whether the officers

12   acted as law enforcement or as medical responders is an objective

13   inquiry." <u>Id.</u> at 440 (citing <u>Davis v. Scherer</u>, 468 U.S. 183, 191

14   (1984); <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 517 (1985)).  Thus, it

15   is not relevant whether paramedics "had a law-enforcement or a

16   medical-response intent; the focus must be on what role their

17   actions reveal them to have played." <u>Id.</u>  "That the episode

18   began with a 911 call and that it ended with a hospital visit

19   rather than an arrest are not the most probative facts....The

20   meat of the inquiry concerns what happened between the very

21   beginning and the very end." <u>Id.</u> at 444.

22   When synthesized, the above cases, all of which had been

23   decided before the incident alleged in the Complaint took place,

24   suggest that defendants – police officers or paramedics – who

25   "seize" an individual while responding to a 911 call requesting

26   medical assistance are entitled to qualified immunity when:

27   ///

28   ///

18

1) the plaintiff was unconscious, incompetent to refuse medical treatment, or dangerous; 2) defendants acted as medical emergency responders, as opposed to law enforcement officer; and 3) the plaintiff was in actual or apparent need of medical assistance. Those are not the facts before this Court.

First, Plaintiff in this case was conscious, competent to refuse medical assistance and did not present any danger to the responding officers or to the third parties.  In addition, Plaintiff's allegations plausibly suggest that the paramedic Defendants acted as law enforcement officers rather than as emergency medical responders.  In particular, the paramedics in this case injected a tranquilizer into Plaintiff not for the purpose of rendering medical aid but for the purpose of assisting law enforcement officers in restraining Plaintiff.  Finally, Plaintiff has sufficiently alleged that, by the time the paramedics arrived at the preschool, there was no medical emergency and he was not in need of medical assistance.  Based on these facts, this Court now holds that Plaintiff has pled sufficient facts indicating the individual Defendants are not entitled to qualified immunity.  See Green, 465 F.3d 65; see also Schreiner v. Gresham, 681 F. Supp. 2d 1270, 1275 (D. Or. 2010) (concluding that by tasering a plaintiff, who was suffering a diabetic episode, in order to force plaintiff to drop a syringe, a police officer violated the Fourth Amendment because, among other things, plaintiff, while not lucid, was conscious at the time she was seized, and because the officer "was not necessarily offering medical assistance").

///

19

1   Finally, the Court's decision is further supported by

2   analogy to those cases contemplating the involuntary

3   hospitalization of mentally ill individuals.  More than three

4   decades ago, the Supreme Court unequivocally stated: "[A] State

5   cannot constitutionally confine without more a <u>nondangerous</u>

6   individual who is capable of surviving in freedom by himself or

7   with the help of willing and responsible family members."

8   <u>O'Connor v. Donaldson</u>, 422 U.S. 563, 576 (1975) (emphasis added).

9   In 1991, the Ninth Circuit concluded that the Fourth Amendment's

10  prohibition of unreasonable seizures applies in the context of

11  involuntary hospitalization and articulated the following

12  standard for involuntary commitment: "Although there are few

13  decisions that discuss the fourth amendment standard in the

14  context of seizure of the mentally ill, all have recognized the

15  proposition that such a seizure is analogous to a criminal arrest

16  and must therefore be supported by probable cause."  <u>Maag v.</u>

17  <u>Wessler</u>, 960 F.2d 773, 775 (9th Cir. 1991); <u>see</u> <u>also</u> <u>Glass v.</u>

18  <u>Mayas</u>, 984 F.2d 55, 58 (2d Cir. 1993) ("[T]he Fourth Amendment

19  applies to involuntary commitment.").  The Tenth Circuit has

20  extended the standard of involuntary hospitalization of mentally

21  ill individuals to situations involving involuntary commitment of

22  intoxicated persons and explained that "it was clearly

23  established in 1995 that civil seizures without probable cause to

24  believe that a person was a danger to himself or others violated

25  the Fourth Amendment."  <u>Anaya v. Crossroads Managed Care Sys.</u>,

26  195 F.3d 584, 595 (10th Cir. 1999).

27  ///

28  ///

20

1    Thus, mentally ill and intoxicated individuals have a
2  clearly established constitutional right to be free from
3  unreasonable seizure in the context of involuntary medical
4  treatment unless the government has probable cause to believe
5  that a person is dangerous.  It would defy common sense to
6  conclude that mentally competent and sober individuals should not
7  be afforded at least the same level of constitutional protection.
8  Accordingly, the Court finds that, at the time of the alleged
9  wrongdoing, Plaintiff had a clearly established constitutional
10  right to be free from unreasonable seizure under the facts
11  alleged here.  Taking all of Plaintiff's allegations as true, the
12  Court thus finds that Defendants are not entitled to qualified
13  immunity, and Defendants' Motion to Dismiss Plaintiff's First and
14  Second Causes of Action on this basis is DENIED.

15

16    **B.    Plaintiff's Third Cause of Action: Deprivation of Right
          to Refuse Medical Treatment in Violation of the**
17          **Fourteenth Amendment.**

18

19    Plaintiff alleges that Defendants violated his Fourteenth
20  Amendment right to refuse medical treatment by "their refusal, by
21  words and actions, to accept [plaintiff's] unequivocal refusal to
22  accept medical treatment, forcibly and hypodermically injecting
23  the drug...into plaintiff's body, forcibly placing plaintiff onto
24  an ambulance gurney, forcibly placing plaintiff into an ambulance
25  and transporting him to [the hospital], and forcing plaintiff to
26  undergo a physical and mental examination."  Compl. ¶ 68.  As
27  above, Defendants again contend that they are entitled to
28  qualified immunity.

1  According to Defendants, Plaintiff's constitutional right "to be
2  free from a health and mental examination in the context of
3  potential seizure while working with preschool children is not
4  clearly established."  MTD at 10.

5       The Supreme Court has held that "a competent person has a
6  constitutionally protected liberty interest in refusing unwanted
7  medical treatment."  <u>Cruzan v. Director, Missouri Dep't of</u>
8  <u>Health</u>, 497 U.S. 261, 278 (1990); <u>see</u> <u>also</u> <u>Washington v. Harper</u>,
9  494 U.S. 210, 229 (1990) ("The forcible injection of medication
10 into a nonconsenting person's body represents a substantial
11 interference with that person's liberty."); <u>Benson v. Terhune</u>,
12 304 F.3d 874, 884 (9th Cir. 2002) ("The due process clause of the
13 Fourteenth Amendment substantively protects a person's rights to
14 be free from unjustified intrusions to the body,...to refuse
15 unwanted medical treatment and to receive sufficient information
16 to exercise these rights intelligently.").  In determining
17 whether plaintiff's right to refuse medical care was violated,
18 however, courts have to balance plaintiff's "liberty interests
19 against the relevant state interests."  <u>Cruzan</u>, 497 U.S. at 279.
20 In particular, this Court should consider "the need for the
21 government action in question, the relationship between the need
22 and the action, the extent of harm inflicted, and whether the
23 action was taken in good faith or for the purpose of causing
24 harm."  <u>Plumeau v. School Dist. No. 40</u>, 130 F.3d 432, 438
25 (9th Cir. 1997) (quotation omitted).
26 ///
27 ///
28 ///

22

1    Accordingly, Defendants argue that "the public's interest in
2  ensuring that Plaintiff did not pose a threat to himself and
3  those around him, including the preschool children he was working
4  with," warranted the intrusion.  MTD at 10.  Contrary to
5  Defendants' contention, however, the Complaint plausibly
6  demonstrates that Plaintiff did not present any danger or threat
7  to himself or those around him.  See Compl. ¶¶ 21,30,48,49.

8    Defendants also argue that "failing to monitor [Plaintiff]
9  and/or give him treatment might result in harm and/or death
10 to...drivers/pedestrians were he to drive himself home or to the
11 hospital."  MTD at 10.  That concern is alleviated based on the
12 allegations in the Complaint indicating that Plaintiff explicitly
13 informed the officers and paramedics that, if they insisted on
14 Plaintiff going to the hospital, he would walk there or would go
15 there with a coworker.  Compl. ¶ 26.  Thus, Plaintiff's Complaint
16 adequately defeats Defendants' argument that Plaintiff could hurt
17 someone while driving to the hospital.  Moreover, a remote and
18 speculative possibility that Plaintiff might hurt other drivers
19 or pedestrians does not rise to the level of a legitimate state
20 interest required to deprive Plaintiff of his substantive due
21 process right to refuse medical treatment.  Thus, taking as true
22 the facts alleged in the Complaint, the Court can plausibly infer
23 that Defendants are not entitled to qualified immunity because
24 they violated Plaintiff's clearly established constitutional
25 right to refuse medical treatment without any legitimate public
26 interest.  Accordingly, Defendants' motion to dismiss Plaintiff's
27 Third Cause of Action is DENIED.
28 ///

     **C.   Plaintiff's First Through Fourth Causes of Action Against Tahoe Emergency Services: Municipal/ Supervisory Liability Based on Alleged Violations of the Fourth and Fourteenth Amendment Violations.[5]**

Plaintiff alleges that the individual Defendants' wrongful acts were the direct and proximate result of municipal policies, procedures, practices, and customs of the municipal defendants, including Tahoe Emergency Services.  Defendants move to dismiss Plaintiff's municipal liability claims on two grounds: 1)  Tahoe Emergency Services is entitled to qualified immunity; and 2) Plaintiff has failed to allege sufficient facts to state a claim for municipal liability against Tahoe Emergency Services. Defendants' first argument is rejected both because the doctrine of qualified immunity protects government officials and not government entities and because, in any event, the Court has already determined above that qualified immunity is not an available defense here.  See Pearson, 555 U.S. at 242 ("[D]efense [of qualified immunity] is not available [in]...§ 1983 cases against a municipality."); Owen v. City of Independence, 445 U.S. 622, 638 (1980) (holding that municipalities "may not assert [qualified immunity] as a defense to liability under § 1983.").

///

///

---

[5] Only Plaintiff's Fourth Cause of Action is technically labeled as one for "Municipal/Supervisory Liability."  Given the fact Plaintiff has also included Tahoe Emergency Services among the named Defendants in the first three causes of action, however, and given the fact the Fourth Cause of Action references all "aforementioned acts and/or omissions of defendants" as the basis for municipal liability, Compl., ¶ 71, the Court will address all of these claims against the entity Defendant together here in the following section.

1    Defendants' second argument is well-taken, however, because
2  the Complaint's conclusory allegations are indeed insufficient to
3  state a viable claim for municipal liability.  Public entities
4  cannot be vicariously liable for the conduct of their employees
5  under § 1983, but rather are only "responsible for their <u>own</u>
6  illegal acts." <u>Connick v. Thompson</u>, 131 S. Ct. 1350, 1359 (2011)
7  (internal quotation marks omitted) (emphasis in the original).
8  In other words, a municipality may only be liable where it
9  individually caused a constitutional violation via "execution of
10 a government's policy or custom, whether by its lawmakers or by
11 those whose edicts or acts may fairly be said to represent
12 official policy." <u>Monell v. Dep't of Social Servs.</u>, 436 U.S.
13 658, 694 (1978); <u>Ulrich v. City & County of San Francisco</u>,
14 308 F.3d 968, 984 (9th Cir. 2002).  To state a municipal
15 liability claim, Plaintiff must also show that Tahoe Emergency
16 Services' policy was a "moving force" of the constitutional
17 deprivation, and that the alleged injury would have been avoided
18 had Tahoe Emergency Services had a proper policy. <u>Gibson v.</u>
19 <u>County of Washoe</u>, 290 F.3d at 1175, 1196 (9th Cir. 2002).

20     A negligent municipal policy does not violate the
21 Constitution; rather, Plaintiffs must demonstrate that the need
22 for more or different action is "obvious, and the inadequacy [of
23 the current procedure] so likely to result in the violation of
24 constitutional rights, that the policymakers...can reasonably be
25 said to have been deliberately indifferent to the need." <u>City of</u>
26 <u>Canton v. Harris</u>, 489 U.S. 378, 390 (1989); <u>Mortimer v. Baca</u>,
27 594 F.3d 714, 722 (9th Cir. 2010).
28 ///

1   "Liability for improper custom may not be predicated on isolated

2   or sporadic incidents; it must be founded upon practices of

3   sufficient duration, frequency and consistency that the conduct

4   has become a traditional method of carrying out policy."

5   Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996).

6         Plaintiff's allegations in support of his municipal

7   liability claim are limited to "a formulaic recitation of the

8   elements of a cause of action,'" which is insufficient to state a

9   claim under Iqbal and Twombly.  See Iqbal, 129 S. Ct. at 1949

10   (quoting Twombly, 550 U.S. at 555).  The Complaint contains a

11   laundry list of allegedly unconstitutional municipal policies,

12   practices and customs, including "the use of excessive force,

13   unlawful seizure, deprivation of the right to refuse medical

14   treatment, infliction of unconsented medical procedures,

15   treatment and services, the failure to maintain adequate

16   policies, and to adequately train, supervise and control law

17   enforcement officers and medical or responding personnel."

18   Compl. ¶ 57.  However, the Complaint is silent as to which of

19   those polices and practices Plaintiff attributes to Tahoe

20   Emergency Services.  Thus, the Complaint does not give Tahoe

21   Emergency Services "fair notice" of the grounds upon which

22   Plaintiff's municipal liability claim against it rests.  See

23   Twombly, 550 U.S. at 555.  Moreover, short of a conclusory

24   allegation of "other similar incidents" of constitutional

25   violations, see Compl. ¶ 55, the Complaint is devoid of any

26   evidence of "practices of sufficient duration, frequency and

27   consistency" that would indicate the existence of an

28   unconstitutional policy or practice.

1  See Trevino, 99 F.3d at 918.  Accordingly, Defendants' Motion to

2  Dismiss Plaintiff's municipal liability claims against Tahoe

3  Emergency Services is GRANTED, and Plaintiff's First through

4  Fourth causes of action are now dismissed with leave to amend.

5

6  **D.   Plaintiff's Fifth through Ninth Causes of Action:**
   **Violations of State Law.**

7

8  Defendants move to dismiss each of Plaintiff's state law

9  claims on the basis Defendants are entitled to immunity under

10 California Health and Safety Code § 1799.107(b), which states:

11    [N]either a public entity nor emergency rescue
      personnel shall be liable for any injury caused by an

12    action taken by the emergency rescue personnel acting
      within the scope of their employment to provide

13    emergency services, unless the action taken was
      performed in bad faith or in a grossly negligent

14    manner.

15 Defendants believe that they are entitled to immunity because the

16 facts as alleged indicate they "acted reasonably according to the

17 information they had at the time."  Compl. ¶ 6.

18 The term "gross negligence" in § 1799.107 "means the failure

19 to provide even scant care or an extreme departure from the

20 ordinary standard of conduct."  Wright v. City of Los Angeles,

21 219 Cal. App. 3d 318, 343 (Ct. App. 1990).  "Whether there has

22 been such a lack of care as to constitute gross negligence is

23 generally a triable question of fact."  Colich & Sons v. Pacific

24 Bell, 198 Cal. App. 3d 1225, 1241 (Ct. App. 1988).

25 The Complaint plausibly demonstrates that Defendants'

26 departure from the ordinary standard of conduct was extreme and

27 thus amounted to gross negligence within the meaning of

28 § 1799.107.

As alleged, Defendants administered a tranquilizer to Plaintiff not for the purpose of rendering medical assistance, but for the purpose of restraining Plaintiff while executing an unreasonable seizure.  Moreover, Defendants forced Plaintiff onto an ambulance gurney, placed additional restraints upon his body, placed him inside an ambulance and transported him to the hospital despite Plaintiff's explicit statements declining medical treatment. Thus, at this stage of the litigation, Defendants are not entitled to qualified immunity under California Health and Safety Code § 1799.107(b), and Defendants Motion to Dismiss Plaintiff's state law causes of action is DENIED.

## CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss Plaintiff's First through Fourth Causes of Action against Defendant Tahoe Emergency Services is GRANTED with leave to amend.  Defendants' Motion to Dismiss Plaintiff's remaining causes of action is DENIED.  Not later than twenty (20) days following the date this Memorandum and Order is electronically filed, Plaintiff may (but is not required to) file an amended complaint.

///
///
///
///
///
///

1  If no amended complaint is filed within said twenty (20) day

2  period, without further notice to the parties, the causes of

3  action dismissed by virtue of this order will be dismissed with

4  prejudice.

5      IT IS SO ORDERED.

6

Dated: April 20, 2012

7

8                                                   _____

9                                              MORRISON C. ENGLAND, JR.
                                               UNITED STATES DISTRICT JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28